No. 13,202

Orleans

———

## WEBB v. LAMBFRT ET AL.

———

(May 19, 1930. Opinion and Decree.)
(June 2, 1930. Rehearing Refused.)
'(August 7, 1930. Writ of Certiorari and Review Refused by Supreme Court.)

———

Johnston Armstrong and Daniel Wendling, of New Orleans, attorneys for plaintiff, appellant.

P. M. Milner, of New Orleans, attorney for defendants, appellees.

WESTERFIELD, J. Plaintiff, a negro brick mason, brings this suit for damages said to be due to physical injuries alleged to have been sustained by reason of his having been struck in the back by a piece of timber, which, it is claimed, fell from an overhanging gallery attached to a building owned by defendants. Defendants answered admitting the ownership of the property from which the timber was alleged to have fallen, but denying any liability because "your respondents are under the belief that this plaintiff was not injured as set forth and is unjustly claiming damages from them."

There was judgment below in defendants' favor, dismissing plaintiff's suit, and plaintiff has appealed.

After a careful examination of the record, we are convinced that the judgment complained of is erroneous. The evidence presented by plaintiff seems to clearly establish the fact that he was injured by the falling of the timber from the gallery of the defendants' property; in fact, there is no dispute on this point. The reliance of defendants in this court is, as it was below, upon the alleged falsity of the plaintiff's testimony; no question being made of its effect and preponderance.

We regret our inability to agree with our brother below, and we are most reluctant to disturb his conclusion upon a question of fact, but we have no alternative when a case is presented, like the present one, where it seems to us that the judgment is not responsive to evidence in the record.

The uncontroverted testimony, as it appears in the record, is that the plaintiff on April 20, 1928, was hit in the back by a piece of falling timber measuring 2″x4″ x54″ and weighing 16 pounds. Two eyewitnesses testified that this timber fell from a balcony attached to the building known by the municipal number 2625 Calliope street (defendants' property). A photograph of the building is in evidence, and there appears a vacant space in the balustrade which would seem to be of the proper size to accommodate a piece of timber of the dimensions of the one which struck plaintiff in the back. At the time of his alleged injury, plaintiff was employed by Jos. Edwards, who testified that the last day he worked for him was April 19th, and that he was reported ill on the 20th. A doctor who treated plaintiff for his injuries presented a bill which was offered in evidence, which showed that the first of a number of professional visits covered by the bill was made on April 20th. Plaintiff's account at a neighborhood drug store showed that a number of prescriptions had been filled for him, and the first charge on this account was on April 20th.

Plaintiff's case, as thus established, is assailed by defendants as having been manufactured, and in support of their position our attention is directed to some inconsistent statements made by plaintiff and one of his witnesses. For example, plaintiff denied having called upon an agent for an insurance company, which it seems had insured defendants' liability in this case, and denied demanding certain payments of money on account of his injury. There is no doubt that plaintiff was mistaken in this respect, because the proof is that he did call at the insurance office and demand some money. Of course, this circumstance does not fortify his testimony, but if it be entirely rejected, his case is amply sus-

tained by that of other witnesses. It is possible that plaintiff's case is manufactured out of the whole cloth, but, we believe, extremely improbable, since it is too circumstantial and involves the co-operation of too many individuals in a nefarious enterprise for the benefit of a negro bricklayer. Besides no sufficient motive appears for such wholesale cupidity.

The evidence concerning the quantum is not as satisfactory as it might be. It appears, however, that his injuries were quite serious and involved his incapacity to work for several months. He incurred certain expenses for doctors and drugs. He had an earning capacity of $1.50 per hour or $12 per day. On the whole we believe the sum of $1,200 to be a proper award under the circumstances.

For the reasons assigned the judgment appealed from is reversed, and it is now ordered, adjudged, and decreed that there be judgment in favor of plaintiff, Carter Webb, and against the defendants, Frank R. Lambert and Oscar M. Moroy, in the sum of $1,200.

## ON APPLICATION FOR REHEARING

PER CURIAM. We are charged with having grievously erred in our decision of this case "because no appellate court of Louisiana, Supreme Court or Court of Appeals has ever before undertaken to disregard the findings of fact in a case where the trial judge, eminent, honorable, and of vast experience on the bench, has declared that the suit was a 'frame-up' and the negro witnesses lied and their testimony was impeached by reputable white witnesses and by the very improbability of the alleged cause of injury, and reverse the judgment, disregarding the fact that the trial judge heard and saw the negro witnesses and estimated their credibility—and this court did not."

We refrain from any comment upon counsel's animadversions upon the negro witnesses, except to say that comparisons are odious. If the jurisprudence is as counsel states it to be, the fact has escaped us, for we have on occasion conceived it to be our disagreeable duty to set aside judgments, though only issues of fact were involved and the court's conclusion reached, as it invariably is, only after able and conscientious consideration. We would have it otherwise, and as able counsel puts it, for it is only from a compelling sense of obligation and of legal necessity that we, with a keen appreciation of our disadvantage, undertake to review testimony the effect of which has been appraised by the learning, experience and integrity which characterizes the judges of our trial courts. This case happens to be one which calls for the discharge of an unpleasant duty.

The application for rehearing in this case is marked by more than the usual vehemence, indignation and criticism, a circumstance calculated to aggravate the unpleasantness which inheres in the exercise of the judicial function in the respect that disappointment and, perhaps, chagrin, must ever be the portion of at least one litigant and one lawyer. Judicial biographers should avoid applications for, and briefs in support of, rehearings as unfit material for their use.

We are asked to amend our decree so as to allow interest from judicial demand. In view of the phraseology of Act No. 206 of 1916 the amendment asked for is unnecessary.